## Case No. 3,792.

### DENNIS v. CROSS et al.

[6 Fish. Pat. Cas. 138; 3 Biss. 389; Merw. Pat. Inv. 340.][1]

Circuit Court, N. D. Illinois. Nov. Term, 1872.

PATENTABLE INVENTION—LANTERNS.

1. Where the patentee claimed "the application of a spring-catch and lips substantially as and for the purposes set forth," and the patent described the application of the catch and lips to the purpose of securing the glass globe in the bottom of the lantern: and it appeared that spring-catches had been previously used for

---

fastening the oil-pot in the bottom of lanterns: *Held*, that the patent could not be sustained.

[Cited in Hancock Inspirator Co. v. Jenks, 21 Fed. 916; Kuhl v. Mueller, Id. 513.]

2. Semble, that a claim for the "application of the spring-catch and lips" would be infringed by the use of catches alone or lips alone.

In equity. Final hearing upon pleadings and proofs.

Suit brought [by Joseph S. Dennis against James E. Cross, James F. Dane, and William Westlake] upon letters patent [No. 13,286] for "improvement in lanterns," granted to Charles Waters, July 17, 1855, and assigned to complainant. The following engraving (Fig. 1) represents the Waters lantern. The globe is sustained by a band, D, having a flange, C, which, when in place, is directly below an annular plate to which the guard-rods are attached. It is held in place by lips attached to the flange, and projecting over the annular plate on one side, and on the opposite side by a latch, e.

No. 1.

No. 2.

No. 3.

Figures 2 and 3 represent the Sangster and Carpenter lanterns. In the former, the oil-pot, I, is held in place by the spring-catches, H, H; and in the latter, by the latch-springs, J, J, provided with latches, M, N. These springs are operated at Q, and have their fulcrums at K, K.

An abstract of the specifications and the claim of the patent will be found in the opinion.

L. L. Coburn, for complainant.
West & Bond, for defendants.

BLODGETT. District Judge. It appears from the pleadings and proofs that Charles Waters, claiming to have invented a useful improvement in the construction of lanterns, which consisted in the peculiar manner of securing the glass shade in the lantern, and also in the peculiar. manner of securing the lamp to the lantern, applied to the patent office for letters patent thereon, describing in his specification the manner of constructing and applying his invention, substantially as follows:

"The top or dome of the lantern is of the usual form, designated in the drawings by the letter A, from the lower edge of which a flange, a, projects outward, and into which the upper ends of the guard-rods are firmly secured. The lower ends of the guard-rods are secured in an annular plate, C, which encompasses the lower part of the lantern.

"A metallic band or rim, D, was then constructed, having a flange, C, around its upper edge, which projects outward from the rim or band. The outer edge of the rim or band is bent or curved downward, so as to present a shoulder, d, on the flange. To the under surface of the flange c is attached a spring-catch, e, the end of which passes through the ledge or shoulder, d. Opposite, or diagonally opposite, the spring-catch. two or more lips, f, are permanently attached to the shoulder, projecting outwardly, so as to pass over the annular plate, C, when the parts are brought into juxtaposition."

The patentee also describes at length. as another part of his invention, his method of attaching the oil-pot to the band, D; but, as this is not involved in the case under consideration. it need not be recapitulated here. After thus describing his device, the patentee proceeds to say:

"The above invention is extremely simple, and allows the ready adjustment of the base to the lantern, and its ready detachment therefrom. No springs are required to be depressed by the hand in order to withdraw the lamp from the lantern or secure it therein; and the glass shade is firmly secured in the lantern without the aid of plaster or cement. thus enabling the shade to be detached with facility for purposes of cleaning. What I claim as new, and as my invention, and desire to secure by letters patent, is the application of the spring-catch, E, and lips, f, substantially as and for the purposes set forth."

It will thus be seen that, after carefully and elaborately describing the mechanical combination of parts whereby the inventor constructs a loose globe, or removable globe-lantern, and the method by which he attaches the upper and lower parts of his lantern together, the inventor contents himself by claiming as new, and asking a patent on, the spring-catch and lips by which the band, D, is secured to the annular plate. C.

Probably no principle of patent law is better settled than that the patentee is limited by his claim. And the courts are only allowed to look at the detailed specification. models, or drawings, for the purpose of construing the claim; as, for instance, if any doubt existed as to the parts of the lantern to be attached together by the catch and lips, a reference to the preceding part of the instrument is allowable for the purpose of settling that point. Whipple v. Baldwin Manuf'g Co. [Case No. 17,514]. "Although the inventor might have claimed something different from what he has claimed, the court must, in the construction of the patent, be governed entirely by the claim he makes." Kidd v. Spence [Id. 7,755].

No patent is here asked or granted upon the top, A, with the flange, a, the annular plate, C, the band, D, with its flange, c, and shoulder, d, either singly or in combination; but the claim is solely for the spring-catch, e, and lips, f, although the inventor reserves to himself the right to use one or more spring-catches and two or more lips. The only question in the case, then, is, whether the proof makes out a case of infringement of this claim against the defendants. The defendants are engaged in the manufacture of lanterns, the top and guard of which are constructed substantially in the manner indicated by the specification in Waters' patent—the wire ring at the bottom of defendants' guard being in all respects, to my mind, the equivalent of the annular plate, C, in Waters' lantern; while the band, D, with the flange, c, and shoulder or ledge, d, are all found in defendants' combination. But, as before remarked, neither of these parts, nor all of them in combination, are covered by the Waters patent.

The defendants connect the base of their lantern to the lower ring of the guard by two spring-catches, instead of spring-catches and lips in combination. And it is insisted by them that Waters limits his fastening to the combination of spring-catches and lips, as shown or provided for in his specifications; but under the well-established rule, that courts should construe a patent liberally, and give the patentee the benefit of every fair intendment, I incline to the opinion that this patent would not be thus limited. So that, although he describes the use of catches and lips, yet he might use catches alone, or lips alone, if he was the inventor of the device.

I do not, however, intend to be understood as expressing a confident opinion on this point, as it is not, in the view I take, decisive of the case. The evidence introduced shows abundantly, to my satisfaction. that spring-catches, such as are used by defendants to connect the lower and upper parts of their lantern, are old devices for that purpose. They are found, as I think, in the application

of H. & J. Sangster, made as early as November, 1851, to the United States patent office, and rejected for want of novelty; also in the letters patent granted to L. B. Carpenter, on July 25, 1854, for an improvement in lamp-fastenings.

It is true, all these devices were for the purpose of fastening the oil-pot or lamp to the rest of the lantern; but this is precisely what the defendants do. When Waters had connected his oil-pot to his band, D, by his springs, K, K, as described, it was still nothing but an oil-pot. And if those parts had been permanently fastened together in his lantern, as they are in some of the cheaper ones made by defendants, then the springs used by defendants perform precisely the same functions as the springs in Sangster's and Carpenter's devices. The spring-catches are old, and the uses to which defendants apply them in their lantern are old; and, although they perform the same function as the catch and lips in Waters' lantern, yet Waters, not being the inventor of these springs, can not cover them by his patent.

It is possible that the Waters catch and lips may, when used in combination with the flat annular band, C, described by Waters, make a better fastening; and if that specific combination was used by defendants, and was covered by Waters' patent, they might be liable; but if, as complainant's witnesses testify, the defendants' two spring-catches are the equivalents of Waters' catch and lips, then the catch and lips are but the two catches, and both are old.

For these reasons, which seem to me controlling and sufficient, the bill must be dismissed.

It is proper to add, by way of explanation, that the proofs show that Waters, in his original application, made his claim broadly for the combination by which the loose globe-lantern, described in his specifications, was constructed, in the following language: "Securing the glass shade, E, in the lantern, by means of the beads or projections, g, h, on the upper and lower ends of the shade; said beads bearing against the lower edge of the top, A, of the lantern and the upper edge of the rim or band, D, which is secured to the annular plate, C, by the spring-catch, e, and lips, f, as herein shown and described. I also claim securing the base, H, to which the lamp, I, is attached to the lantern by means of the springs, K, K, fitting over the head or projection, F, on the inner side of the rim, D, as described." But the patent office rejected this claim, in which decision he acquiesced, and amended his claim by substituting the one now appearing upon the patent, and by that he must stand. If he was really the inventor of the loose globe-lantern described in his specifications, he might have appealed from the decision of the examiner who rejected his application, and probably his broad claim to the entire invention would have been allowed. Bill dismissed.